IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

LONNIE JOSEPH PARKER                                      PETITIONER

vs.                          CASE NO. **4:98CR00236 GH**
                                      **4:03CV00058GH**

UNITED STATES OF AMERICA                                  RESPONDENT

## <u>MEMORANDUM OPINION AND ORDER</u>

Petitioner Lonnie Joseph Parker ("Parker")  was indicted in a five count indictment on November 9, 1998, charging him in Count 1 with receiving six computer images of child pornography in violation of 18 U.S.C. § 2252(a)(2) on or about September 28, 1997; Count 2 receiving twelve computer images of child pornography in violation of 18 U.S.C. § 2252(a)(2) on or about December 13, 1997; Count 3, receiving three computer images of child pornography in violation of 18 U.S.C. § 2252(a)(2) on or about December 20, 1997; Count 4, possession of three or more (twelve) images of child pornography in violation of 18 U.S.C. § 2252(a)(4)(B) on or about January 27, 1998 on his computer and disks; and Count 5, forfeiture of the computer under 18 U.S.C. § 2253.   He was tried before a twelve person jury on May 22 through 25, 2000.  The jury acquitted him of Count 1, were unable to reach a verdict on Counts 2 and 3, and convicted him on Count 4.  The Court declared a mistrial on Counts 2 and 3.

Parker filed a motion for judgment of acquittal which was denied on June 12, 2000. The government's motion to dismiss Counts 2 and 3 was granted on June 19, 2000.

Parker was sentenced to 37 months' imprisonment with three years of supervised release.   The judgment and commitment was entered on September 18, 2000 and

-1-

Parker surrendered to the institution on November 13, 2000.

Parker filed a notice of appeal on September 19, 2000.  The government filed a notice of cross-appeal on September 22, 2000.  Parker also filed a motion for new trial based on a *Brady* violation on November 8, 2000, which the Court denied on November 30, 2000.  That order was appealed on December 7, 2000.

The three appeals were consolidated and were submitted to the Eighth Circuit Court of Appeals on May 15, 2001.  On October 9, 2001, the Eighth Circuit affirmed the conviction and reversed and remanded the case for resentencing.  *United States v. Parker*, 267 F. 3d 839 (8th Cir. 2001).    Parker's petition for rehearing was denied on November 29, 2991.

On January 18, 2002, Parker was resentenced to 57 months' imprisonment followed by three years' supervised release.

The Supreme Court denied Parker's petition for writ of certiorari on April 15, 2002. *Parker v. United States*, 122 S. Ct. 1592 (2002).  The parties stipulated to forfeiture of the computer and a final order of forfeiture was entered on October 17, 2000.

The following is a recitation of the facts by the Eighth Circuit in *Parker*, 367 F.3d at 842 -43[1].

> In 1997, Parker relocated from Minnesota to Little Rock, Arkansas, to begin his medical residency at the University of Arkansas. Soon after his move, United States Customs officials began investigating Parker as a recipient of images containing child pornography. Customs officials were alerted to Parker's involvement with child pornography through their investigation of an individual named Freddie Gravely who resided in Michigan. Gravely had sent six pornographic images to an America Online subscriber who was using the screen name "FUNWUN777." The subscriber was Parker.
> Parker agreed to cooperate with Customs agents, and during a subsequent interview, Parker informed the agents that his daughter had

---

[1]In his petition to vacate, Parker includes a 16 page " factual summary."  He admits that the summary includes matters not in evidence but includes them as an offer of proof.

received the images while visiting an Internet chat room, and that he had reported the incident to the FBI and the National Center for Missing and Exploited Children (NCMEC). The Customs agents were unable to substantiate Parker's assertion that he had contacted either agency. Parker also told the agents that he was told to download and print out the images and send them to both agencies. Parker did not send copies of the images to either agency. Parker offered to provide Customs agents with the name of the FBI agent who instructed him to download the pornographic images, but Parker never followed through with his offer. Parker invited the Customs agents to his home and executed a consent form, authorizing their search of his home for child pornography. At the agents' request, Parker copied the pornographic images stored on his computer's hard drive onto computer diskettes. The extent of Parker's collection was voluminous. Agents seized the disks and Parker's computer. The next day, Parker requested to meet again with Customs agents. Parker explained to the agents that contrary to what he had reported earlier, he-and not his daughter-had received the child pornography. He stated that he had printed out the images that he received and sent them to the FBI and the NCMEC. Parker stated that he voluntarily continued to receive pornographic images in an attempt to compile a list of suspect pornographers to assist law enforcement officials. When asked by Customs agents for his list of suspects, however, he was unable to provide it. Parker also informed the Customs agents of a previous episode that occurred while he was a fourth-year medical student at the Mayo Clinic, in Rochester, Minnesota, when he received a message from an individual in an Internet chat room. This individual offered to allow Parker to have sex with the man's adolescent daughter, as well as providing pictures of the interlude in exchange for a fee. Parker was told to meet the girl at a Minneapolis-area motel. Parker reported this solicitation to the FBI. FBI agents investigated Parker's complaint and initiated a surveillance operation at the motel; however, neither the individual nor his daughter ever materialized at the motel. Parker was charged in a five count indictment: three counts of receiving child pornography, one count of possessing child pornography, and one count of criminal forfeiture. Parker filed a motion indicating that he intended to assert a public authority defense because, he contended, he was assisting law enforcement officials in their attempt to identify and apprehend persons sending him pornographic material to his Internet account. At trial, however, Parker presented no evidence on his own behalf. Thus at the close of the trial, the district court refused to instruct the jury on Parker's reliance upon public authority, concluding the trial record contained insufficient evidence to warrant such an instruction.

<u>Standard of Review</u>

Parker raises a number of claims, most of them based on ineffective assistance of counsel.  Before proceeding to a discussion of those claims, the Court will address Parker's argument regarding the appropriate standard for reviewing an ineffective assistance claim.

In an ineffective assistance of counsel claim, Parker must demonstrate "that counsel's performance was deficient and that [he] was prejudiced by the deficient performance to such an extent that there is a reasonable probability that the outcome of the trial would have been different absent counsel's error." *Bucklew v. Luebbers*, 436 F. 3d 1010, 1016 (8th Cir. 2006).   Parker must establish both prongs; if defendant has suffered no prejudice the Court does not have to analyze the performance prong. *Boysiewick v. Schriro*, 179 F.3d 616, 620 (8th Cir. 1999).   "Judicial scrutiny of counsel's performance is highly deferential, indulging a strong presumption that counsel's conduct falls within the wide range of reasonable professional judgment." *Id (citing Strickland v. Washington*, 466 U.S. 668, 689 (1984)).  Parker has the burden to "overcome the strong presumption that counsel's actions constituted objectively reasonable strategy under the circumstances." *Becht v. United States*, 403 F.3d 541, 545 (8th Cir. 2005) (citation and internal quotation marks omitted).   The Court will not "'second-guess trial strategy or rely on the benefit of hindsight, and the attorney's conduct must fall below an objective standard of reasonableness to be ineffective." *Williams v. United States*, 452 F. 3d 1009, 1013 (8th Cir. 2006) (citations omtited).

To prove prejudice, Parker must establish that "there is a reasonable probability that but for counsel's unprofessional errors, the result of the proceedings would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Strickland*, 466 U.S. at 694.

Parker argues that the Court should consider the cumulative effect of trial counsel's errors in determining whether there was prejudice.  Just recently the Eighth Circuit rejected a similar argument, finding that it contradicts Eighth Circuit precedent. *Middleton v. Roper*, 455 F.3d 838, 851 (8th Cir. 2006).  *See Hall v. Luebbers*, 296 F. 3d 685, 692 (8th Cir. 2002) ("In our circuit, a habeas petitioner cannot build a showing of prejudice on a series of errors, none of which would by itself meet the prejudice test.") Thus, Parker must establish both deficient conduct and prejudice with respect to each of his claims of ineffective assistance of counsel in order to be entitled to relief.


Parker's Motion for an Evidentiary Hearing

Parker moves the Court for a hearing on his request for post-conviction relief. Under 28 U.S.C. § 2255, the Court shall grant a prompt hearing on the motion unless the motion and files and record conclusively show that the petitioner is entitled to no relief.   A petition, however, "can be dismissed without a hearing it  (1) the petitioner's allegations, accepted as true, would not entitle the petitioner to relief, or (2) the allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact."  *Engelen v. United States*, 68 F. 3d 238, 240 (8th Cir. 1995).

The Court has reviewed the petition, the additional submissions of the parties as well as the record in this case and as will be set out below, the Court is not persuaded that a hearing is necessary.

Grounds for Relief

### I.  Ineffective Assistance of Counsel

Under a broad ineffective assistance of counsel claim, Parker asserts that counsel was ineffective for not putting on any defense or calling witnesses who were present and prepared to testify, or for not  cross-examining witnesses effectively, or not preparing a defense and that deprived him of a jury instruction on the defenses of public authority or entrapment by estoppel.   This claim has a number of subclaims which will be discussed below.

Before discussing the subclaims, Parker discusses generally his defense of public authority and how counsel's performance hindered Parker's ability to present the defense of public authority or entrapment by estoppel.[2]   "Public authority" is an "affirmative defense where the defendant seeks exoneration based on the fact that he reasonably relied on the authority of a government official to engage him in covert activity." *United States v. Achter*, 52 F. 3d 753, 755 (8th Cir. 1995).  "Entrapment by estoppel" applies when an official assures a defendant that certain conduct is legal and the defendant reasonably relies on that advice and continues or initiates that conduct."

---

[2]Parker filed a notice of defense based on public authority on January 6, 1999 (document no. 23).  *See* Fed. R. Crim. P. 12.3.

*Id.* (citation omitted).  Parker notes that counsel's failure to produce anything of substance deprived Parker of getting a jury instruction on the defense.   As will be discussed below, the Court is not persuaded that counsel's performance was ineffective and that the failure of the Court to give a jury instruction on the defenses of public authority or entrapment by estoppel did not prejudice Parker.

Parker's retained counsel vigorously pursued defending Parker.   Counsel filed a number of pre-trial motions, and he aggressively cross-examined the government's witnesses.  Counsel videotaped Parker and his wife in preparation for their anticipated testimony.  That the jury acquitted Parker on Count 1 and were unable to reach a verdict on Counts 2 and 3 lend support to the government's position that Parker cannot show that he was prejudiced by counsel's behavior.  *See Pryor v. Norris*, 103 F. 3d 710, 714 (8th Cir. 1997) (counsel's strategy may have worked where defendant received sentences substantially less than he could have received).

A.  Defense counsel was constitutionally ineffective for failing to put on a defense or calling witnesses that deprived him of his only defense.

Parker contends that he had a host of witnesses to testify and exhibits to offer on his behalf, and that defense counsel, on his own, decided that the defense would rest without calling any witnesses.  Parker contends that the failure to call witnesses, including Parker, on his behalf was prejudicial.  Parker makes several offers of poof to support his contention.

Parker's assertion that counsel unilaterally decided to not call witnesses is somewhat belied by Parker's own petition.  According to Colleen Parker, she learned by

a telephone call by defense counsel  the night before the government rested that she might not be called to testify.  Additionally, at the time the government rested, counsel stated that he wanted a recess to talk to some witnesses subpoenaed by the government to see if he would call them. [3] After the recess, counsel announced that the defense rested as well.  Defendant sat silent.

The inference from the above is that Parker concurred with counsel's decision not to call any witnesses.  In support of this inference, the government has submitted the affidavit of William C. Muse, a retired special agent for ATF, who was a friend of Parker.  Muse states in the affidavit that he came to Little Rock to testify at the request of the government.  While at the courthouse, Muse states that he saw Parker in the hallway who told Muse that he would not call Muse to testify because he was not putting on any witnesses.

The Court notes that the affidavit itself is not conclusive.   Nevertheless, the Court is persuaded that the evidence supports the conclusion that counsel did not unilaterally decide not to call witnesses.

Even assuming counsel was ineffective in failing to call witnesses, as discussed below Parker cannot establish that the failure prejudiced him.

(a) Lonnie Joseph Parker:

Parker claims that had he testified he would have explained to the jury how the

_____

[3]Tr. 277

child pornography came to be on his computer,[4] what he tried to do to interest law enforcement in it, and the circumstances surrounding the e-mail about the 13 year old female and her father wanting to videotape her having sex.    Parker further contends that he would have provided information to the jury of his prior law enforcement experience.

The government contends that the proffered testimony would not have affected the outcome of the trial. The government points to the inconsistencies in Parker's proposed testimony.  Parker initially told agents that his daughter had inadvertently received the pornographic images while in a chat room.  He later admitted that he was the one who received the images.  Additionally, Parker's ex-wife, Colleen, stated that Parker received the images in 1997, while Parker claims that he initially received the first images of child pornography in 1996.

Other inconsistencies in Parker's proffered testimony undercut his credibility. Parker contends that he contacted the National Center for Missing and Exploited Children (NCMEC) on several occasions to report that he had received images.  He gave conflicting reports regarding whether he was told to mail the images to NCMEC.

Testimony concerning Parker's defense was introduced through the government's witnesses.  Thus, the jury was told about Parker's assertions of contact with the FBI and NCMEC and his contention  that he was assisting law enforcement.

---

[4]Parker states that he is prepared to call Kim Thiel, an individual who works with AOL, who would testify about how unwanted files could end up being loaded.  This testimony would be of no use to Parker on the possession conviction as he does not dispute that he possessed the pornography.  His theory is that he possessed it in order to assist the FBI.

Even assuming that Parker established that he contacted law enforcement to assist, he cannot refute that he failed to provide the information to the FBI as requested.  That is, he continued to possess the child pornography even after being told to bring it in to the FBI.  His allegations of being too busy ring hollow in light of the fact that he basically passed by the Little Rock FBI office regularly on his way to work.  His allegations concerning the difficulty in sorting and downloading the images also ring hollow in light of the evidence of the time it took to download the information to the diskettes and in light of his ex-wife's testimony at sentencing that she told Parker to put images into a separate file on the computer, that Parker kept the images in a separate file, and that Parker printed images to send to the NCEMC.

Thus, Parker cannot establish that he was prejudiced by not being allowed to testify at his trial.

(b) Colleen Parker

Parker also states that his ex-wife, Colleen Parker, was present and ready to testify.  She could, according to Parker, corroborate Parker's calls to law enforcement. At the sentencing hearing she testifed about Parker's shock at seeing the child pronography on his computer and knew of calls to law enforcement.

Colleen Parker stated that she wanted to testify, and that defense counsel even videotaped her and Parker to prepare them as witnesses.  She claims that she found out that they might not be testifying until the night before the government rested based on a telephone conversation with defense counsel.

The proffered testimony of Colleen Parker would not assist Parker or make a

difference.  She testified at the sentencing hearing.  Much of what she knew she learned from Parker.  She stated that she only heard some conversations (from Parker's end)  and was not specific as to the nature of the conversations.  Furthermore, her testimony not only contradicted that of Parker, it was in certain respects damaging to him.     According to her, Parker placed the images in a separate file in the computer.[5] She also stated that Parker downloaded images to mail to the NCEMC although she could not verify that the images were actually sent.  That Parker was able to separate and print the images contradicts Parker's assertions that it was too difficult and he was too busy to separate and download the images to take them to the FBI.

(c) Dr. Jessica Saberman

Parker states that  Dr. Jessica Saberman, a classmate of Parker at medical school, would testify that Parker had told her about the child pornography he had received and that he was trying to help authorities catch the perpetrator.

Saberman's proffered testimony would be of no assistance to Parker, and could, in fact, be damaging to Parker.  According to Saberman, Parker stated that he contacted the NCMEC in 1995, possibly leading the jury to conclude that Parker was involved with child pornography even longer than he claimed.  Everything else Saberman "knew" was based on what Parker had told her.

(d) FBI Agent David Price

David Price is an FBI Agent in the Rochester, Minnesota office.  According to

---

[5]Sentencing Tr. 76-77.

Parker, Price received Parker's initial call to the FBI about the child pornography images and learned from Parker about the man offering to produce pornography.  Parker contends that Price referred Parker to FBI Agent Tucker in the Minneapolis office. Parker contends that Price would testify that he encouraged Parker's efforts and specifically instructed Parker not to destroy any images on the chance that a suspect might be identified later.

Price's proposed testimony would not be of assistance to Parker.  The parties do not dispute Price's report regarding the sting operation.  What Price would have testified to is already in the record as a joint exhibit.  Thus, Parker was not prejudiced by counsel's failure to call Price as a witness.

(e) FBI Agent Jim Tucker

Jim Tucker is an FBI Agent in the Mineapolis office.  According to Parker, Tucker would testify to Price's and Parker's contacts about Parker having received child pornography and his desire to catch those involved.  Tucker also faxed a message on November 10, 1996 to the St. Louis Park Police Department which was the subject of a motion for new trial.  *See* Ground 5 *infra*.

The proposed testimony of Tucker would not have changed the outcome of the trial.  The Eighth Circuit found that the sting operation in Minnesota had nothing to do with defendant's possession of child pornography in Little Rock, Arkansas. Furthermore, the jury had testimony regarding the sting operation in Minnesota.  Thus, the proposed testimony of Tucker would be cumulative.

(f) ATF Agent Bill Muse

Bill Muse is an Alcohol, Tobacco and Firearms (ATF) agent who came from Hawaii allegedly to testify for Parker.[6]   Parker contends that Muse would have testified that Parker assisted him on a confidential basis in helping him identify felons illegally buying firearms in Hawaii as well as Parker's actions while a Deptuy Sheriff in Hawaii and his interest in law enforcement.

The government counters that even if Muse would testify as Parker indicates, Muse would also provide damaging testimony.  Muse's affidavit, attached as Exhibit 1 to the government's response to the § 2255 petition, recounts Parker's description of the sting operation which differs significantly from Parker's later account.  More importantly, Muse's proposed testimony regarding Parker's previous undercover work would cast doubt on Parker's proffered testimony regarding his attempt to assist the FBI.  Parker had previously been used as an confidential informant.  He should have known the proper protocol for operating in an undercover capacity but he could not even identify the agents with whom he spoke regarding his receipt of child pornography.

As the government notes, defense counsel was in possession of Muse's statement and wisely decided not to call him as a witness.

(g) FBI Agent Brent Moser

Brent Moser was a supervisor in the FBI's Little Rock office and according to Parker would have testified that he found that FBI Agent Glen Brandon was the agent to whom Parker talked in late 1997 about receiving child pornography.

---

[6]Muse was subpoenaed by the government, and therefore it is unclear whether Muse was present to testify for Parker.

Again, this testimony would not be of assistance to Parker.  Brandon testifed at the trial about his contact in 1997 from Parker regarding child pornography on his computer.  Brandon told Parker to "print it out, bring a copy to the office.  And he said that he would.  That's the last I heard of it.  He never come [sic] in with a copy." [7]

Counsel was not ineffective for failing to call Moser.

(h) Parker's Telephone Records

In addition Parker states that he had telephone records available which would have corroborated calls to the FBI's Minneapolis and St. Paul Offices.

As discussed above, the jury heard testimony regarding Parker's contact with the FBI agents.  Again, that Parker called the FBI offices does not establish that he was assisting law enforcement especially in light of the evidence that Parker failed to deliver the images he obtained to the FBI.   Thus, the telephone records would have been cumulative at best and would hardly suffice as evidence of Parker's defense.  In sum, the proposed evidence would not have changed the outcome of the trial.

(i) Subpoenaeing NCMEC's Records

Parker states that counsel was ineffective for failing to examine Ms. Holmes about the call Parker made to the NCMEC and for failing to subpoena telephone records of the NCMEC.

Even assuming that such records exist, they would not be of assistance to Parker.  Parker's assertions regarding his contacts with the NCMEC are conflicting.  He

---

[7]Trial Tr. 214.

states that he was told not to mail the images, then was told to mail them.  According to a tape recording of Parker's contact with the NCMEC, the NCMEC informed Parker that mailing images was illegal.  Furthermore, Parker could not establish at the sentencing hearing that he ever really mailed the images.  At the most, he prepared the images, placed them in an envelope and thought he mailed them.

The records of the NCMEC are of no substantive value to Parker and would not have changed the outcome of the trial.

In sum, Parker has failed to establish that he was prejudiced by counsel's failure to call the above mentioned witnesses or to introduce the above identified records.  Indeed, it is clear that counsel made a well-reasoned decision not to call these witnesses, as their testimony could well be damaging to Parker, particularly in pointing out the inconsistencies in Parker's own testimony as well as undercutting his defense that he was assisting law enforcement.  *See Winfield v. Roper*,  –F.3d. –, 2006 WL 2404058 , *5 (8th Cir. 2006) (counsel not ineffective for not calling witnesses who would damage defendant's case or whose testimony would be cumulative).  None of the proposed evidence would have been sufficient to support a public authority instruction and Parker failed to establish a reasonable probability that the outcome of the trial would have been different had such an instruction been given.  The jury had evidence regarding Parker's alleged contacts with the FBI and NCMEC.  His counsel argued the defense to the jury.  The evidence, however, clearly established that Parker was guilty of possession of child pornography and that the possession was not authorized by any law enforcement or government official.

-15-

B.   Parker contends that he was denied his constitutional right to testify in his own behalf, and that he did not waive this right.

There is no dispute that a criminal defendant has a constitutional right to testify in his own behalf. *Rock v. Arkansas*, 483 U.S. 44, 52 (1987).   A defendant, however, can waive his right to testify by simply remaining silent.   Here, Parker sat silent when his counsel announced that he was going to rest.   "[I]f an accused desires to exercise [his] constitutional right to testify the accused must act affirmatively and express to the court [his] desire to do so at the appropriate time or a knowing and voluntary waiver of the right is deemed to have occurred." *United States v. Kamerud,*   326 F.3d 1008, 1017 (8th Cir. 2003)(citations omitted).

Parker is a highly educated individual,  who not only was a physician but had experience in law enforcement.   As the court in *United States v. Bernloehr*, 833 F.2d 749, 751-52 (8th Cir. 1987) stated under similar circumstances:

> Here, Bernloehr, an apparently mature and sophisticated businessman, represented by able and experienced counsel, made no objection when his counsel rested without calling Bernloehr to the stand. As the First Circuit has stated, "[t]he accused must act affirmatively" in these circumstances. *United States v. Systems Architects, Inc.*, 757 F.2d 373, 375 (1st Cir.), *cert. denied*, 474 U.S. 847, 106 S.Ct. 139, 88 L.Ed.2d 115 (1985); *cf. United States v. Janoe*, 720 F.2d 1156, 1161 n. 9 (10th Cir.1983) (right to testify not denied where, inter alia, "defendant made no objection to his attorney's statements that defendant would not testify and made no request to testify"), *cert. denied*, 465 U.S. 1036, 104 S.Ct. 1310, 79 L.Ed.2d 707 (1984); 18 U.S.C. § 3481 (1982) ("the person charged shall, at his own request, be a competent witness") (emphasis added). The defendant may not, as Bernloehr did, indicate at trial his apparent acquiescence in his counsel's advice that he not testify, and then later claim that his will to testify was "overcome." *See Hollenbeck v. Estelle*, 672 F.2d 451, 453 (5th Cir.) ("Post-conviction displeasure with his attorney's advice does not change the basic constitutional

-16-

determination."), *cert. denied*, 459 U.S. 1019, 103 S.Ct. 383, 74 L.Ed.2d
514 (1982). Nothing in the record supports such a claim, and we therefore
agree with the trial court's assessment that Bernloehr "[was] not, in fact,
muzzled."

Furthermore, even if Parker had testified it would not have changed the outcome

of the trial.  As discussed above, there is no dispute that Parker possessed child

pornography, that it was illegal to do so, and that Parker failed to take any action to

follow the directions of law enforcement officials to deliver the images to them.

C.  Counsel was ineffective for promising a defense in opening statement and not

delivering it.

Parker contends that his counsel was ineffective in  promising to "fill the gaps"

for the jury in his opening statement, painting Parker as a "hero" who "hates child

pornography" but that in failing to deliver on these counsel was ineffective for promising

a defense in opening statement and failing to deliver it.  The opening statement hardly

amounted to a definitive statement that Parker would offer evidence in support of his

defense of public authority.  A reading of the opening statement does not support the

conclusion offered by Parker.

From the beginning of the trial, the jury was told of the burden of proof, and that

Parker did not have to testify.[8]   This is not the case where defense counsel promises

to produce important evidence but then fails to do so. *See Anderson v. Butler*, 858 F. 2d

16 (1st Cir. 1988) (counsel was ineffective for failure to produce expert witnesses who

---

[8]Tr. 12 (defendant starts out with a clean slate, does not have to prove his innocence).

were promised to jury during opening statement ). *But see Williams v. Bowersox*, 340 F. 3d 667, 672 (8th Cir. 2003) (upholding state court's finding that counsel did not render ineffecdtive assistance in failing to call two witnesses who were identified during opening statement).   Here, counsel merely stated that the jury would get "a good look at our law enforcement agencies at work."[9]  Defense counsel proceeded to cross examine the agents, and attack their credibility and the validity of the investigation of Parker.   In closing, counsel focused on the inadequacies and problems with the government's case and their investigation.

The Court finds that Parker's claim of ineffectiveness with regard to counsel's opening statement is without merit.

D.  Defense counsel's failure to cross-examine the Custom agents about deleting images from and ruining the hard drive of Parker's computer left the impression that Parker was tampering with evidence to hide something.

Parker claims that the testimony of the customs agents left the inference that Parker had deleted the images from his computer in an attempt to destroy evidence. Parker contends that the testimony is false and is prepared to call Robert Gray as an expert witness on the use of computers by professionals.  In particular, Gray would testify that there are commonly available programs to clean hard drives such as the one on Parker's computer.

During redirect examination of Agent Mensinger, defense counsel objected to

---

[9]Trial Tr. 71.

Mensinger's testimony regarding the shredder program.[10]   Defense counsel argued that

Mensinger was not a computer expert and therefore could not establish that Parker had

deleted the files.    Agent Davenport then testified as the the nature of the shredder

program.  According to Davenport, it appeared that the shredder program had been

used.[11]

The evidence established that the program is found on computers and that it

might have been used in this instance.  During closing argument defense counsel noted

the inconsistency of the testimony, arguing that the shredder program could not have

been used as the agents were still able to retrieve the files from the hard drive.

The Court finds that counsel was not ineffective in his handling of the testimony

regarding the deletion of files.    Furthermore, given the testimony of Parker's

cooperation in downloading the images for the agents, the Court is not persuaded that

the jury was left with the impression that Parker was trying to hide or destroy evidence.

**II.  Defense Counsel was ineffective for not objecting to an erroneous jury instruction that called attention to defendant's failure to testify.**

The Court instructed the jury that "[y]ou should judge the testimony of the

defendant in the case in the same manner as you judge the testimony of other

witnesses."  (Tr. 332).  Defense counsel did not object.  Additionally, no jury instruction

---

[10]Trial Tr. 188.

[11]Trial Tr. 236.

-19-

was given on the right of Parker not to testify.   *See Carter v. Kentucky*, 450 U.S. 288, 305 (1981) (trial judge must give instruction on defendant's right not to testify when requested to do so).

The government argues that the claim is procedurally defaulted because Parker did not raise the issue at either sentencing or on direct appeal.  Parker counters that appellate counsel was ineffective for not raising it on appeal.

To obtain review of a procedurally defaulted issue, Parker must establish cause and actual prejudice, or that he is actually innocent.  *Johnson v. United States*, 278 F. 3d 839, 844 (8th Cir. 2002).  Even assuming that the failure of appellate counsel to raise the issue establishes cause, Parker cannot show that he was actually prejudiced.  "To establish actual prejudice, [Parker] must show that the erroneous jury instruction 'worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions.'"  *Id.* (quoting *United States v. Frady*, 456 U.S. 152, 170 (1982)).

As found by this Court and the Eighth Circuit, there was substantial evidence to convict Parker.  The Court is not convinced that had the offending sentence been omitted from the jury instruction that the jury would not have convicted Parker of the possession count.  It is clear, based on the jury's actions on the remaining counts, that the jury carefully considered the evidence presented at trial, and the erroneous instruction did not prejudice Parker.

**III.  Defense Counsel was ineffective in his closing argument for vouching**

**for the prosecutor and her case, making little sense, referring to extraneous matters not in evidence which could only confuse the jury, dwelling on revocation of consent to the search which underscores guilty knowledge, and even referring to Parker's failure to testify.**

Parker contends that counsel's closing argument was a "pointless, disjointed effort at discrediting the law enforcement officers, pleading with the jurors about a violation of Parker's constitutional rights in a virtual request for jury nullification, without seriously attempting to address the government's case." (Petition at 69).

The Court need not dwell long on his argument.    Defense counsel attempted to point out the weaknesses in the government's case, attacking the credibility of the government agents, particularly Mensinger.   Defense counsel's "calling attention to its lack of witnesses" emphasized the weakness of the government's case.

While Parker may not have liked defense counsel's closing argument or have wished that defense counsel stated something different, there is nothing in the record to find that defense counsel was ineffective in his closing argument.    Furthermore, that the jury acquitted Parker on one count and were unable to reach a verdict on two other counts supports the conclusion that counsel's closing argument was effective.

In sum, Parker has failed to "overcome the strong presumption" that counsel's closing argument "might he considered sound trial strategy."  *Seehan v. State of Iowa*, 72 F. 3d 607, 611 (8th Cir. 1995) (citations and internal quotation marks omitted).

**IV.  Search issues**

A.   Defense Counsel was ineffective for not challenging the consent search as being obtained by trickery or a false promise.

Parker asserts that counsel was ineffective for not challenging the government's position that the search was consensual.  According to Parker, the officers obtained consent under the pretext that his cooperation would be the "end of it."

Defense counsel filed a motion to suppress. The Court found that Parker had voluntarily given his consent to the search and denied the motion.  Defense counsel adequately pursued the search claim.  That the Court ruled against Parker does not mean counsel was ineffective; it means that the Court found no merit to Parker's claim. The result of the search issue would not be different had counsel pursued the argument now advanced by Parker.

B.  Defense counsel was ineffective for not pursuing the search question as a due process and general search violation.

Parker contends that counsel should have moved to dismiss the indictment on the basis that the conduct of law enforcement officers in obtaining the search warrant was, according to Parker, "outrageous."   Parker asserts that the FBI Agent lied when he obtained the search warrant from the Magistrate Judge in claiming that the computer was not searched prior to the request for the warrant.

According to Parker, the computer was searched on January 29, 1998, when Parker created the disks.  In the affidavit for the search warrant on February 6,

Mensinger swore that the computer had not been searched prior to the request for the warrant.

This issue was addressed at trial.  Mensinger testified that the search referred to in the affidavit had to do with the search of the residence.[12]   Thus, there was no basis for counsel to raise the due process issue.  Even if he had raised the issue, Parker would not have prevailed.

Parker also contends that defense counsel should have objected to the general search of the computer and  that it violated the Fourth Amendment.  This argument is also without merit.  As the government points out, image files can have other extensions besides ".jpg" and that child pornographers may change the extensions of file names to hide their collection.  Furthermore, images may have been contained in other programs, such as Parker's e-mail.  Thus, the search of the computer was reasonable and any attack by counsel on the general nature of the search would have been unsuccessful.

In sum, the Court finds that counsel was not ineffective with regard to the search issues.  Even assuming deficient performance, Parker cannot establish that he was prejudiced by it.


**V.  Brady Claim**

A.  The government had and withheld evidence of Parker's participation in child pornography investigations with the FBI that was prejudical to his defense

---

[12]Trial Tr. 166

Parker contends that the government withheld evidence in violation of *Brady v. Maryland*, in particular a memo regarding a telephone call between Parker and FBI Agent James Edward Tucker about the e-mail Parker received concerning the Minnesota man who wanted to arrange a liason so that he could videotape his 13-year old daughter having sex.  The memo dated November 10, 1996,  was faxed from Tucker's home to Sgt. Dan Kubes of the SLPPD. This memo would, according to Parker, corroborate Parker's contention that he was working with the government

Parker complains that  the failure to log the information into the FBI's system was a violation of the records maintenance requirements of 5 U.S.C. § 552a(c).  He asserts that Mensinger's statement to Parker that the FBI never heard of Parker was false as far as the FBI was concerned.   Parker asserts that the document was material and points to the prosecutor's closing argument asserting that if there was proof that Parker was working with the FBI or the NCMEC and either approved of it "the case would have been over right then and there."[13]

Parker raised the *Brady* issue in a motion for a new trial which the Court denied. The Eighth Circuit affirmed this Court's ruling, agreeing that the documents were neither material nor exculpatory to his charge of possessing child pornography in Arkansas. [14]

Parker contends that the Eighth Circuit ruling denying the motion for a new trial is not res judicata.  He contends that the record was not fully developed when the *Brady* claim was raised in the motion for new trial.  Parker states that the evidence needed to

---

[13]Trial Tr. 289.

[14]267 F. 3d at 845-46.

be considered in the context of the defense of public authority, which was not presented.
Alternatively, Parker argues that counsel was ineffective for not leaving the issue for a §
2255 or raising the entire claim of failure to put on a defense with the *Brady* claim in the
motion for new trial.

"To succeed on his amended *Brady* claim, [Parker] must establish (1) the
prosecution suppressed evidence, (2) the evidence was favorable to him, and (3) the
evidence was material to either his guilt or his punishment. To establish materiality in the
context of *Brady*, the accused must show there is a reasonable probability that if the
allegedly suppressed evidence had been disclosed at trial the result of the proceeding
would have been different.. A 'reasonable probability' is a probability sufficient to
undermine the reviewing court's confidence in the outcome of the proceeding."
*Mandacina v. U.nited States.* 328 F.3d 995, 1001 (8th Cir. 2003 ) (citations and internal
quotation marks omitted)

As discussed above, Parker failed to provide any evidence to establish that he
was in possession of child pornography pursuant to instruction by law enforcement
agencies.  The evidence clearly establishes that Parker failed to follow the directions of
law enforcement officials to turn over the pornogoraphy; instead he retained it on his
computer.

Parker's *Brady* claim cannot be relitigated.  It has been addressed and decided
adversely to Parker.  Nothing Parker presents in his § 2255 petition warrants the Court
reconsidering  the *Brady* claim.  The Court remains convinced that memo was not
material.

**VI.  Parker is entitled to dismissal or a new trial for the prosecutorial misconduct of the Assistant United States Attorney who violated 28 U.S. C. § 530B and Fed. R. Crim. P. 6(d) in bringing and pursuing this action when she was not licensed to practice law anywhere in the nation.**

The Assistant United States Attorney, Lesa Jackson,  who brought and prosecuted the case was suspended by the U.S. Attorney's Office on August 24, 2001, for failure to have a law license in good standing in at least one state.[15]   Jackson had not paid her fees since March 1989. She voluntarily surrendered her law license on March 7, 2002.  Parker contends that Jackson's conduct violates 28 U.S.C. § 530B(a), the McDade Amendment. [16]

Parker argues that the prosecution is a nullity under Arkansas law, relying on Arkansas cases holding that a filing of a complaint in a civil case by a lawyer not licensed to practice in the state is a nullity,  *Davenport v. Lee*, 348 Ark. 148, 162 (2002) and non-Arkansas cases holding that a defense attorney provides ineffective assistance of

---

[15]Jackson tried the case but she did not handle the appeal.  Assistant United States Attorney Todd Newton was substituted for Jackson prior to sentencing by Order entered August 30, 2000 (docket entry 89).

[16]28 U.S.C. § 530B provides:
(a) An attorney for the Government shall be subject to State laws and rules, and local Federal court rules, governing attorneys in each State where such attorney engages in that attorney's duties, to the same extent and in the same manner as other attorneys in that State.

counsel when practicing under disbarment or suspension, *see State v. Newcome*, 577 N.E.2d 125 (Ohio App. 1989).  He further argues that Jackson's conduct as an unauthorized government lawyer violated the integrity of the grand jury process and its indictment, and is therefore cause for dismissing the indictment or at least granting Parker a new trial.

Arkansas law does not support Parker's position.  Jackson operated as a *de facto* official.  *See Bell v. State*, 334 Ark. 285, 299 (1998) (Assistant Attorney General who assisted in prosecution of murder conviction was *de facto* official);*State v. Roberts*, 255 Ark. 183 (1973) (deputy prosecuting attorney who had not been reappointed or reconfirmed after prosecuting attorney's new term had *de facto* status);  *Chronister v. State*, 55 Ark. App. 93 (1996) (city prosecutor without authority to prosecute for state criminal violation was *de facto* official when he prosecuted defendant for misdemeanor violation of state law).

> A de facto official is one who by some color of right is in possession of an office, and performs its duties with public acquiescence, though having no right in fact; the acts of de facto officials may not be questioned based upon the lack of legal authority except by some direct proceeding instituted for the purpose by the State or by someone claiming the office de jure, or when the person himself attempts to build up some right, or claim some privilege by reason of being the official he claims to be; in all other cases, the acts of an officer de facto are as valid and effectual while he retains the office as if he were an officer by right, and the same legal consequences will flow from them for the protection of the public and third parties.

55 Ark. App. at 95.

> A person who enters into an office and undertakes the performance of the duties thereof by virtue of an election or appointment is an officer de facto,

though he was ineligible at the time he was elected or appointed, or has subsequently become disabled to hold the office. Indeed, it is settled by a current of authority almost unbroken for over 500 years in England and this country, that ineligibility to hold an office does not prevent the ineligible incumbent, if in possession under color of right and authority, from being an officer de facto with respect to his official acts, in so far as third persons are concerned.

*Pennington v. Oliver ,* 245 Ark. 251, 254(1968) (citations and internal quotation marks omitted).

"The doctrine rest [s] upon principles of protection of the public and third parties, and was engrafted upon the law as a matter of policy and necessity to protect the interest of the public and individuals involved in the acts of persons performing the duties of an official without actually being one in law. " *Farm Bureau Policyholders and Members v. Farm Bureau Mut. Ins. Co. of Arkansas, Inc.* 330 Ark. 350, 352 (1997)

Here, Jackson operated as a *de facto* officer during her course of employment with the United States Attorney's Office.  She was appointed by the Attorney General of the United States and vested with the power to investigate and prosecute criminal cases within the Eastern District of Arkansas. 28 U.S.C. §542 (a)( "The Attorney General may appoint one or more assistant United States attorneys in any district when the public interest so requires."); 28 U.S.C. § 547 (U.S. attorney shall prosecute for all offenses against the United States). Jackson operated under color of authority by virtue of her appointment and that she did not have a valid license at the time does not invalidate any of her actions.  "[T]he 'de facto officer doctrine' confers validity upon acts performed by a person acting under color of official title, even though it is later discovered that the legality of that person's appointment or election to office is deficient."  67 C.J.S. *Officers*

§ 339.

With respect to his claim that he is entitled to relief because Jackson's conduct affected the integrity of the grand jury, Parker contends that Jackson defrauded the government.  "[S]he was a total fraud; her appearance in court was a fraud on the court; her actions bring disrepute to this Court, the United States Attorney's Office, and the U.S. government."  [17]  "To obtain dismissal of an indictment, a defendant must generally show both flagrant misconduct and substantial prejudice."  *United States v. Tulk*, 171 F. 3d 596, 598 (8th Cir. 1999).   Parker cannot establish any prejudice resulting from Jackson's actions.  He has not presented any evidence that Jackson elicited perjured testimony, exerted undue influence on the grand jury or did anything else in violation of the law.  Jackson was acting on behalf of the U.S. Attorney who was licensed to practice and authorized the indictment to be presented to the grand jury.  Furthermore, any possible prosecutorial misconduct before the grand jury was cured by the subsequent finding of guilty.  *United States v. Mechanik,* 475 U.S. 66 (1986)(violation of F. R Cr. P. 6(d) rendered harmless by virtue of petit jury's subsequent guilty verdict).   *See also United States v. Deaton*, 2005 WL 1922877, *4 (E. D. Ark. 2005 (finding that Jackson acted as *de facto* official)

Thus, the Court finds that this claim should be dismissed.


**VII.  Parker is actually innocent, and his incarceration violates due process**

---

[17]Petitioner's reply brief at 22.

**of law and constitutes cruel and unusual punishment**

Parker summarily states that he is actually innocent of the charges against him and submits that he will show through the evidence omitted from the case by defense counsel in Ground 1 that he would have prevailed on his defense of public authority.[18]

The Court has dealt extensively with Parker's claims in Ground I and found that the proffered evidence would not have made a difference. "Actual innocence" means that it is more likely than not that no reasonable juror would have convicted him in light of all the evidence. *Bousley v. United States*, 523 U.S. 614, 623 (1998). It is clear that Parker cannot meet this requirement.

Furthermore, "actual innocence" means factual innocence, not legal insufficiency. *Id.* As the government notes, Parker does not contend that he did not commit the acts with which he was charged but only that he has a legal justification to have done so.

Parker has not presented any evidence to support a claim of "actual innocence." As discussed above, there was sufficient evidence for the jury to convict Parker of possession of child pornography.

**Supplemental Petition**

Parker filed a supplemental petition to vacate under 28 U.S.C. § 2255 on July 13, 2004, asserting that his sentence violated *Blakely v. Washington*, 125 S. Ct. 2531 (2004). In particular, Parker argues that since none of the enhancements were found by

---

[18]Petition at 115

-30-

a jury or beyond a reasonable doubt, the enhancements are void.  Parker argues that the sentencing should be vacated and he should be resentenced at a base offense level of 17. [19]  On January 12, 2005, Parker filed a supplemental memorandum in support of his 28 U.S.C. § 2255 motion on the basis of the Supreme Court's ruling in *United States v. Booker*, 125 S. Ct. 738 (2005).   He contends that his sentence was in violation of his Fifth and Sixth Amendment rights as his sentence was enhanced by facts not found by a jury or admitted by him.

Petitioner's supplemental motions must be denied.  The Eighth Circuit has held that *Booker* is not applicable to cases on collateral review, where the sentence became final before the date *Booker* was decided.  *Never Misses a Shot v. United States*, 413 F. 3d 781 (8th Cir. 2005).  *See also Lefkowitz v. United States*, 446 F. 3d 788, 791 (8th Cir. 2006). Thus, the rule of *Booker* cannot apply to defendants whose convictions were final before January 12, 2005.

**Motion for Appointment of Counsel**

When Parker filed his original § 2255 motion, he filed a motion for appointment of counsel.  At the time of the filing of the petition, Parker was indigent and incarcerated.

Under § 2255, the Court may appoint counsel.  There is no constitutional right to appointment of counsel in a postconviction proceeding.  Only if the Court determines an

---

[19]Parker also argues that the U.S. Sentencing Guidelines should be declared unconstitutional.  That argument has been addressed and decided in *United States v. Booker,* 125 S. Ct. 738 (2005).

evidentiary hearing is necessary, is Parker entitled to appointment of counsel.  Rules Governing Section 2255 Proceedings for the United States District Courts, Rule 8(c).  *See  Green v. United States*, 262 F. 3d 715 (8th Cir. 2001).

The Court has determined that an evidentiary hearing is not necessary, *see supra*.   While counsel for Parker filed an extensive petition, as well as additional motions, the Court is not of the opinion that counsel was necessary.  The claims advanced by Parker are not unique or complicated. The Court is persuaded that Parker could have presented the claims *pro se*, particularly given his familiarity with the record and arguments previously presented to both this Court and the appellate court.

Counsel undertook the filing of the petition without court appointment.  The Court, however, notes that counsel  states that Parker has signed a fee agreement with him.  Counsel, therefore, is not remediless and can seek recovery under the fee agreement.

Thus, the motion for appointment of counsel is denied.


**CONCLUSION**

Accordingly, the motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 is denied.  The motion for appointment of counsel is denied.  All pending motions are denied as moot.

IT IS SO ORDERED this 8th day of September, 2006.

_____
UNITED STATES DISTRICT JUDGE